Thank you. The next case we'll hear is C. v. United and this is 22-4082. May it please the Court, Brian King for the Appellants, Plaintiffs, E&C, and A.C. in this case. This case deals with a child who was treated at Catalyst Residential Treatment Center for a variety of mental health and substance use disorders. He was dealing with persistent depressive disorder, generalized anxiety disorder, oppositional defiant disorder, and ADHD. Those are mental health conditions. But he was also diagnosed and treated throughout his stay at Catalyst for a variety of moderate to severe substance use disorders, including his use of alcohol, marijuana. He had a history of cocaine, codeine, hallucinogenic mushrooms, LSD, and Xanax use. The first issue that we are dealing with here is a threshold issue of what the standard of review is and what effect noncompliance with the procedural requirements of ERISA has in terms of the substantial compliance doctrine, which, as this Court is well aware of, has been in place here at the Tenth Circuit and most circuits across the country. The issue that was well preserved, we believe, in front of both the arguments made that there are violations, various violations of the claim procedure regulations. At what point does a plan administrator that is otherwise vested with discretionary authority under the terms of the plan, which under Firestone v. Bruck is required, to move the standard of review from de novo to abuse of discretion? Doesn't it have to be more than an allegation of an irregularity? There has to be a procedural irregularity. That's correct. And Judge Nielsen found that there were no procedural violations. He found that there were no procedural violations that created, that drew into question the substantial compliance. Well, I would, the way I read his opinion, and you tell me if I'm wrong, is that there were seven separate procedural irregularities that you identified. The first six, he said there is no procedural violation. The seventh, he found that there was substantial compliance. In your opening brief, you don't argue that the district court erred in rejecting the argument that there were any procedural irregularities. In fact, even in the reply, I'm not sure that I see any specific argument that you have made to us that there were, in fact, any procedural violations. So it seems an academic, an important issue, but an academic issue. Because if we were to say that you're right and remand and say, okay, well, you applied an overview. Don't apply the arbitrary capricious test if there are any procedural violations. And Judge Nielsen says, did you not hear me the first time? There are no procedural violations. It would all be academic. I think, Your Honor, that there's no question that we allege and that the court found that there were concerns about procedural violations for a number of reasons. We've outlined them in the briefing both before the district court and here. But let me outline what I think is the one that is most clear, and that is what you've got is a failure on the part of United in this case to provide information during the pre-litigation appeal process, what's sometimes referred to as the administrative appeal process, that meaningfully engaged with the information that was provided by the family. That's the thing that we'd spent a lot of time talking about. We provided supplemental authority in the form of DK and David P. that this court has decided recently in terms of does this pre-litigation appeal process and the dialogue that should and needs to take place reflect that, in fact, United took into account the information that was provided by the family, that they did what they needed to do under the claim procedure regulations to carry out a full and fair review. Now, the details we've outlined in the briefs before the district court and we referenced those particular points, the points that you referenced, Your Honor, here in our briefing, the details of those things are things that definitely, as you point out, plaintiffs need to present. And they need to do it in a way that arises to something more than as the ACA claim procedure regulation revisions refer to as de minimis. If they're de minimis, they don't matter. And nobody, we wouldn't stand here and say that a de minimis violation results in, needs to result in a de novo standard overview. But we've outlined a number of things that go far beyond de minimis. And we've argued them to judge, to the district court. And the district court said, well, some of these I don't buy. Some of these I think do implicate and raise, call into question whether the substantial compliance doctrine is still in issue. And it's certainly the thing that we've been talking about all along in terms of preserving for this court's review. So substantial compliance is on the table to be considered, we believe. And we believe that there's plenty of information before the district court that allows this panel to feel comfortable talking about it, addressing whether it's here. In fact, the Tenth Circuit has dodged the question on a number of situations. They've come and said, well, we're not going to get into whether the situation exists where we still have substantial compliance in light of the 2002 revisions because we've got a situation where they didn't even substantially comply. Look, if you made that ruling and then went on to consider whether, in fact, there was an abuse of discretion found that United did abuse their discretion, I'm fine with that ruling. But I do think that this threshold question about whether substantial compliance still works is an important one for the court to address. For this reason, if none other, since I don't think there's been another case, I could be wrong about this, but I don't think there's another case that the circuit has addressed, specifically the Medicare or rather the ACA revisions of the claim procedure regulations. It talks about in great specificity the details of what it means to have a violation of the claim procedure regulations that don't result in a situation where you have a de novo standard review. Well, Holmes certainly postdated the 2011 regulations. Why aren't we bound by Holmes? Yeah, that's right. Holmes did. But I don't believe they referred specifically to this specific section of the CFR, 29 CFR section 2590.715. I won't quote the rest of it. It's too long. But you all know what I'm talking about because we talked about it, both sides talked about it in the briefing. So what we would suggest and what I think is important is that we are advancing the scope of the likelihood that we have procedural integrity and fairness occurring in this pre-litigation appeal process. And there's a reason I don't refer to it as the administrative appeal process, because it's not a true administrative appeal process. It doesn't have the hallmarks of fairness, procedural fairness that a real security administration. It doesn't have an impartial decision-maker, first and foremost. You're saying under the regulations or the way they did it? The reality of how these ERISA plans work never have an impartial decision-maker. They always have either an insurance company that has a financial self-interest or they have a financial interest at work because there's a third-party administrator who is hired by The regulations require full and fair review. They preclude the initial administrator from making a decision. And I'm a little surprised because I thought that your argument was really going to rely heavily on Dr. Person as being the decision-maker. Well, if we ignore what Dr. Person did and we conflate what Dr. Jones did and Dr. Person, I think you would be hard pressed to say that Dr. Jones disregarded AC substance abuse disorder. My point is larger. It's the point that what we really don't have here is an administrative appeal process that bears the hallmarks of procedural fairness in the same way that a social security administration hearing does. Therefore, the claim procedure regulations have to be strictly adhered to to ensure that you don't have a more likely infection of self-interest into the process. Setting aside the individual facts of this particular case, talking about whether substantial compliance is appropriate more generally. It's critically important we contend for this court and others across the country to recognize that we need to hold decision-makers' feet to the fire in terms of compliance with the claim procedure regulations because that will ensure two things. Number one, it will make it more likely that you have the correct decision made in this pre-litigation appeal process. And number two, it will actually reduce the workload of the federal judiciary because you'll find that people will be more likely to be satisfied, if not happy, at least satisfied in the procedural fairness and the fact that they consider that the individual decision-maker has taken into account the concerns of the particular case and they won't be as likely to go out and find an attorney. And if they do find an attorney who knows what they're doing, that attorney will look at it and say, not much we can do with this in terms of taking it into litigation. That's critically important because a full and fair review is what Congress requires from these decision-makers and it's what way too often we don't have. Well, let's just take your application of this principle in the real world in this case. Well, there was a decision, I think, on July the 12th based on what the designee for the EONC waits a full six months, January 4, 2017, before he ever says one iota about criticizing what Dr. Jones had said. By then, it is long past the 30 to 60 days that the provider had predicted before AC would have been set to be discharged from the residential facility. And so, well, yeah, there was no dialogue between July the 12th and 2016 and January 4, 2017, but that wasn't United's fault. No, no, it wasn't. He never asked for anything. You're right, Your Honor. You're right, Judge. Why isn't that a problem that EONC, the class that he waited so long? Because the family has 180 days under the claim procedure regulations to appeal. In an ideal world, would it have been done sooner? Of course. In the real world, it's hard to get people helping families that know what they're doing. Ignorant families, and I don't mean that term in a disparaging way. I mean people who are uninformed about how you appeal these things and what the best way of doing it is. And I'm not saying that he waited too long or latches or anything like that, but in terms of whether it was arbitrary or capricious for Dr. Person to have said that after getting a letter in January 2017, well, by that point, even the provider had already said that he would wait until 2016 only to be requiring inpatient treatment through September. You've got to look at the contents of the July letter. The July letter does not contain the kind of analysis of the co-occurring conditions that we're talking about here. But that's not what you're complaining about. You're complaining about Dr. Person. Well, we're complaining not about one particular person. We're complaining about the contents of the denial letter. Which was? None of them have any meaningful analysis about what the relationship is between the drug use and the relationship between the mental illness. And on that point, you were counsel in DK, right? Yes. And you gave us a very short Rule 28J. What is, before you leave in 2 minutes and 35 seconds, can you summarize where that DK decision leads? Yes, I can. And what you think that we can use that to do in ruling in your favor? Thank you. Happy to, Judge Phillips. DK has been decided. There was a petition for rehearing filed by United in that case. It was denied by this Court without requesting any input from us as an appellee in the case. The David P. case, so DK is final and it's settled law precedent. It's a published decision. David P. is in a position similar in many respects in the sense that there was a ruling in favor of the plaintiff at the trial court, came up to the Court of Appeals. Court of Appeals decision was in favor of the appellee, reaffirmed the district court. There was a point, I'm the counsel on David P. also. And we argue that there should be a petition for, there should be rehearing by the panel because the only thing that was reversed in that case was there was a, they reversed the order of remand. They reversed the order of the district court that the payment for the benefits should be made. We objected to that remand from this, from the panel, from the Tenth Circuit. And that petition for rehearing is currently pending before the court. And information from United has been asked in response to that petition for rehearing. So that's the status of those two cases. They're both published decisions, but one is more final. And thank you for that because it's good to know the status. But are you coming in with DK in your hand, raising it up in the air and saying, aha, I win? Are you saying, is DK considered on some point that it's important? I think both DK and David P. support the position that we're taking, that if the denial letters do not have a meaningful analysis of why the claim's being denied, it's an arbitrary and capricious denial. And at the very least, there has to be a remand, if not an order of payment of benefits. Now, we believe order of payment of benefits is appropriate. But what you've got in both DK and David P. is at least a ruling in both those cases that there is arbitrary and capricious conduct. And with that, I'll reserve my 23 seconds. Good morning, Your Honors. Amanda Berman for UnitedHealth. And joining me at council table today is my colleague, Ms. Amy Polley. Your Honors, claimants spent most of their briefing trying to get this court to overturn decades of precedent and change the standard of review for benefits decisions where the plan gives the administrator discretion. They only attacked one substantive aspect of the plan's decision on appeal. And that's the substance use issue, whether United adequately addressed that when it denied coverage. We think that UBH more than sufficiently addressed that issue, primarily in Dr. Jones' letter, and I'll get to that. Why do we look at Dr. Jones' letter? The regulations require full and fair review in an administrative appeal. The administrative appeal under the regulations preclude the initial person who participated in the decision for participating in the administrative appeal. Dr. Person is the person who made the ultimate decision. And in David P., Judge Abell's published decision refers to the decision maker in the administrative appeal as the decision maker. So don't we look at Dr. Person, not Dr. Jones, as the decision maker? And where in Dr. Person's letter do we find any reference to substance abuse disorder? So, Your Honor, a couple answers to your question there. So, first off, I don't think either DK or DP, as we call them, suggest that you only look at one denial letter. I think what the court was saying in both of those is that you need to look at what was communicated to the claimant. You look at the denial letters. And here, if we look at them collectively, substance use is very clearly addressed in Dr. Jones' letter at several different intervals head on. Now, admittedly, Dr. Person's letter is not explicit on the issue. Or is it even implicit? Yeah, I think it is, Your Honor. So she said several things that go to both the mental health issues, the anxiety and ADHD, as well as substance use. For example, she said, you know, he made progress. He doesn't require 24-hour supervision. Her notes then show she was looking at the fact that he went on vacation twice with his parents. And she also says his remaining symptoms is just parental child conflict. And that can be addressed at a less restrictive stage of care. By the way, those vacations, were they before or after July the 12th? Your Honor, I believe one was over Christmas. So I think afterwards, well afterwards. Yeah, they were well. And in fact, the weaning off of the antidepressants, all of that is post-Dr. Jones' letter. All of that is post-July 12, 2016. So you're saying that we can take these as a group. Well, Dr. Person is relying on things that hadn't even transpired historically when Dr. Jones had written her letter. So Your Honor, I'd like to start with what was in the record then when Dr. Jones wrote her letter and some of the things she referred to. So she does tackle substance use head-on. She recognizes it was a reason for admission. She finds and states that AC is not experiencing withdrawal or substance use-related symptoms. And she concludes that AC can be treated in a dual diagnosis program. That, by definition, is a program that addresses both mental health and substance use issues. She also points to her conversation with the Catalyst facilities designee, her peer-to-peer conversation. And then in her notes, she notes at various points that that representative acknowledged that AC essentially was not receiving treatment for substance use there. The representative said this is not a 12-step program. He's been referred to Alcoholics Anonymous, but he's not yet attending meetings. And his goals and his treatment at the facility were not specifically tailored to substance use. So when then in her letter she refers to that conversation, and she recommends that he move to a dual diagnosis intensive outpatient program. So she's essentially recommending a level of care that involves an increase in regards to substance use-specific treatment. And then six months later, Eonsi, the dad, writes a detailed letter to United and explains why he is criticizing that rationale. And then Dr. Persson says, at most implicitly, about the substance abuse disorder, referring to things that hadn't even happened as of July 12, when Dr. Jones had written the letter. So if we do look at Dr. Persson as... Well, the first question is, why don't we look at Dr. Persson as the decision maker? Because Dr. Persson is, in fact, the decision maker under the administrative review process that the regulations spell out. Your Honor, I would dispute the suggestion that Dr. Persson is the only decision maker. The denial decision was initially made by Dr. Jones. And if we look at what the court did in DP, it looked at all of the internal reviewer's letters when looking to see if the issue had been addressed. Now, interestingly, in DP, the court rejected reliance on the external reviewer letter, which was the last one, the last stage of appeal in that particular process. So I think that really rejects the idea that we only look at the last decision. The important thing from both the DK and the DP cases is that you've got to communicate the reasons to the claimants. And here, Dr. Jones' letter went to the claimants. So it doesn't just drop away. We don't ignore it because Dr. Persson then provides her own view of the facts. And I think many of the things she said apply to both. Your Honor, I would like to address the standard review issue a little because it's an important one. This is three decades of precedent from this circuit that we don't think the court should really take up the issue here. And if it does, we don't think it should overturn that precedent. Your Honor, I do want to point out, and I'm not trying to be ticky tacky here, that I think we have a waiver problem. Despite arguing that the substantial compliance doctrine shouldn't be followed anymore, in their brief here on appeal, claimants did not actually say what the procedural error, what procedural error they think justifies de novo review in this case. I think that is a fundamental failing here, and it makes this not a good case to take up the issue. Now, they may have intended to argue that the procedural error is the failure to address substance use. But I think Judge Nielsen got that dead right, Your Honor, that that is a substantive issue. That is not a procedural issue. There has to be a line between the two. And if we look at this circuit's case law, talking about when is a claim deemed denied under these regulations from 2002 and 2011, they're all talking about situations where the plan doesn't issue a decision. It just sits on the appeal letter. You never get a decision. And so then you get to go to court. And that's the sort of error where the courts have found that you don't get deference anymore. Now, if the court does reach the issue, we do think this is the better approach. Not only is it this circuit's precedent under Gilbertson, under the Holmes decision in 2014, Hancock 2009, Martinez in 2015, it's aligned with Supreme Court precedent on this issue. In a series of cases, Firestone, Metropolitan Life Insurance, and then Conkwright, the Supreme Court has consistently rejected efforts to strip deference away from plan administrators. And I want to point the court specifically to the language from the Metropolitan Life Decision in 2008, where the court said, first, if Congress wanted de novo review to apply to a risk of plan claims denials, it would have said so. And second, the court refused to adopt a rule that would bring about near universal review by judges de novo over risk of plan claim denials. And that's exactly what the approach that my opponent is advocating would do here. Anytime there is a non-de minimis error, you jettison deference, and you go to de novo review. And so we think it would be really inconsistent with Supreme Court precedent. And Your Honor, every other circuit to address the issue except the Second Circuit agrees. Fourth, Fifth, Eighth, Tenth, Ninth, Eleventh, we've outlined those in our briefs. I won't go through them. We've got one circuit that's gone the other way, and that's the HALO decision out of the Second Circuit. And it's a fundamentally flawed decision, Your Honor. It's not consistent with the Supreme Court's subsequent decision in Kaiser versus Wilkie. In HALO, the Second Circuit deferred to the Department of Labor's language in its preamble to the 2000 regulation. And there's a bit of confusion there, because that rule became effective in 2002. So sometimes it's called 02. It was enacted back in 2000, though. And so the Second Circuit defers to this preamble language that basically says, yeah, we want to change the standard of judicial review. But as many courts have recognized, nothing in the regulatory text actually did that. It seemed like DOL wanted to make a change and realized it probably couldn't and would have a problem. So it was inappropriate for the Second Circuit to be deferring to the Department of Labor's regulatory preamble. And this is not an issue on which the Department of Labor is an expert. This is an issue on which the courts are an expert. It's for the courts to decide, as the Supreme Court said in the Metropolitan Life case, what the appropriate standard of review is. And so finally, Your Honors, on this issue, I just want to point out that applying Danova review anytime there's some error would really disrupt the balance that Congress struck between the executive branch and the judiciary branch when it enacted ERISA. And I think the Chamber of Commerce addresses this well in its brief. And I just want to point out that Congress made a decision to give the Department of Labor authority to enact regulations defining the internal claims process. And all these regulations that have been referenced in the brief, the 2000 and 2011, that's the heading on all these things, the internal claims process, deemed exhaustion of internal claims. Congress never gave the Department of Labor authority to get into the standard of review at the judicial level. And to the contrary, we had the Supreme Court statement in Metropolitan Life that Congress left that to the courts. So we don't think this court should jump to construe the regulations or the preamble text to take that power away from the courts where every other circuit except the Second has declined to do so. Now, returning to the merits issue, the one merits issue raised in this case, we talked a bit about what's in the two letters, Dr. Jones's letter. I do think it very comprehensively covers the issue. It's not long. These letters generally aren't. They have to be understandable. That's actually in the regulation to the claimants. But she does address it at several points. She recognizes that he's admitted for both. She says he's not suffering withdrawal symptoms. She says he can be treated in dual diagnosis. And she points to her conversation with the catalyst representative. Isn't it a little counterintuitive that she's relying on what the designee said when the designee also said on July 8, I think, that his anticipated IOC discharge date is 30 to 60 days? Well, sure, Your Honor. But as both of these letters say, whether a facility thinks you should stay with them is not determinative. And the plan isn't saying you shouldn't have any coverage. The plan isn't even saying that it might not be better for you to stay because of whatever your unique circumstances are at the facility. What it's saying, what it's deciding is, is residential treatment. This 24-7 level of care that has to meet certain criteria. You've got to see a psychiatrist very regularly. Is that really required at this point for this person? Or could they step down to a lower level of care, like intensive outpatient, where they're back with their family, but they're in treatment for a large part of the week? And here, Dr. Jones's conclusion was this was a case where what she's hearing from the representative indicates that a dual diagnosis intensive outpatient facility was the appropriate level of care. And this is after two months, after AC was at a wilderness program, and then he had had two weeks covered at the residential treatment facility. And finally, Judge Phillips, I want to address DK briefly. We've talked a bit about DP. I think there's a real difference between this case and DP, where there was only one passing reference to admission for substance use in one of the denial letters, and no discussion of what the plan thought of that ground for coverage. There's no statements about withdrawal, none of the rest of the stuff we see in Dr. Jones's letter. So factually, this is just a very different case. Now, DK doesn't address a similar substantive issue at all. The issues raised in DK have not been raised on appeal here, so it has no relevance to the substance. And it supports us on the standard of review. Yet again, in DK, the court applied the arbitrary and capricious standard despite finding several errors in the decision. So again, I think DK only supports us in regard to the standard of review issue and has no application to the substance of this case. Why does it not, when we have Dr. Peacock and Dr. Childs, I think it is, and they don't touch on that, the decision letters. In other words, they don't engage with the claimant's evidence. Sure, Your Honor, and frankly, my answer there is that is not an issue that was raised on appeal in this case. They haven't pursued that as a ground for the district court's decision being incorrect on that issue. Your Honor, I think the key point here at the end of the day is that the denial letter addressed substance use from Dr. Jones, explaining why residential treatment wasn't medically necessary for both the mental health issues and the substance use issues. And so the court should therefore reject the claimant's challenge on the substantive issue as well as their attempt to change the standard of review for benefits denial decisions. And I see I have some time left, but unless there are questions, I think that's about all I've got. Thank you. Thank you, Your Honor. Amy, I cheated Mr. King out of a bunch of his time, so I'm going to give you an extra minute. Thank you. I don't know that I'll need it, but I'll try to be concise. Here's the problem. We have the first letter from Dr. Jones. There's a reference to substance use disorder. We don't think it's a meaningful analysis, but nevertheless, there are some references in it. But then you have the appeal, where the family talks about it at greater length. Dr. Person responds in the January letter and fails to address it at all. There's simply no reference to it. We think D.K., we think David P. are dispositive on this issue on that point. What about her opposing counsel's comment that you didn't raise it? Oh, I think that's just wrong. I think we did raise it because we talked about it at length in the district court opinion, and we referenced and incorporated by reference in our briefing those points and discussed the fact that there was not a full and fair review. This is just a subcategory of full and fair review and the failure to provide a full and fair review. Finally, the last thing we would say is if you don't hold self-interested or sublime fiduciaries' feet to the fire in the claim procedure regulations, the likelihood that the Uniteds of the world will continue to try and cut corners is great. That's the point that we are making with why substantial compliance is a bad idea and we need to get rid of it. Thank you. All right, thank you, counsel. This matter will be submitted. Counsel on both sides incidentally did an excellent job in Greece and in New Orleans today. It will be submitted. We'll take a 10-minute break and then we'll resume for our last three cases.